ALBERT D. AND VIVIAN M. CHEESMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cheesman v. Commissioner
Docket No. 12411-90
United States Tax Court
T.C. Memo 1994-509; 1994 Tax Ct. Memo LEXIS 513; 68 T.C.M. (CCH) 925; October 12, 1994, Filed *513 Decision will be entered under Rule 155. Albert D. and Vivian M. Cheesman, pro se. For respondent: Randall B. Pooler. CLAPP
CLAPP
MEMORANDUM OPINION CLAPP, Judge: Respondent determined deficiencies in, and additions to, petitioners' Federal income taxes as follows: Additions to Tax
Sec. Sec. Year
Deficiency
6653(b)(1)(A)
6653 (b)(1)(B)
Sec. 6661
1986
$ 14,477
$ 10,858
[1]
$ 3,619
1987
22,483
16,862
[2]
5,621
After concessions by respondent, the issues for decision are: (1) Whether petitioners are entitled to cost of goods sold in the amounts of $ 3,308 and $ 43,341 in 1986 and 1987, respectively. We hold that they are not. (2) Whether petitioners are entitled to Schedule C deductions in 1986 for electric and rent expenses in excess of the amounts allowed by respondent. We hold that they are not. (3) Whether petitioners had unreported income according to the source and application of funds method, in addition to the Schedules C adjustments, in 1986 and 1987. We hold that they did in 1986, but not in 1987. (4) Whether Albert D. Cheesman *514 (Mr. Cheesman) is liable for self-employment tax for income earned in 1986 and 1987, and whether Vivian M. Cheesman (Mrs. Cheesman) is liable for self-employment tax for income earned in 1987. We hold that they are. (5) Whether petitioners are liable for additions to tax for fraud under section 6653(b). We hold that they are. (6) Whether petitioners are liable for an addition to tax for a substantial understatement of income tax under section 6661 for 1986 and 1987. We hold that they are. Petitioners' earned income credit will be adjusted automatically based on our resolution of the above issues. Respondent concedes that petitioners are entitled to dependency exemptions for their sons, Byron and Bruce, in 1986. Respondent also concedes that funds held in two accounts with Crossland Savings are not funds belonging to petitioners. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some of the facts have been stipulated and are found accordingly. We incorporate by reference the stipulation of facts and attached exhibits. Petitioners *515 are husband and wife, who resided in Bradenton, Florida, at the time they filed their petition. Background
During 1986 and 1987, petitioners operated two videotape rental businesses in Bradenton, Florida. One store was located on 26th Street West (26th Street store) and the other on Carlton Arms Boulevard (Carlton Arms store). In 1986, petitioners also operated two other videotape rental businesses that ceased operation in that year. One store was located in Arcadia, Florida (Arcadia store). The other was located on 14th Street West in Bradenton, Florida (14th Street store). The four stores were operated individually by petitioners and their son Byron. Each time a customer rented a videotape, petitioners recorded the amount paid on an invoice. Most of the transactions involved cash. Petitioners used either a cash register or a cash drawer in their stores. Petitioners totaled the amount in the register or drawer at the end of each day, recorded that amount, and discarded the cash register tape of their daily receipts. Petitioners used cash from the stores to pay both business and personal expenses, but did not keep records of these transactions. Petitioners did not *516 deposit all business receipts into bank accounts and did not record the amounts that were deposited. The income and expenses of all the stores were reported on Schedules C attached to petitioners' income tax returns. For the years in issue, petitioners reported income (loss) from the businesses as follows: Schedule C
1986
1987 Carlton Arms Store
$ 10,723.96 ($ 110.87)
Arcadia store
2,092.29 --   14th Street store
(4,171.69)
--   26th Street store
111.42 8,819.87 8,755.98 8,709.00 Petitioners did not report any other source of income and did not receive any nontaxable or excludable income, gifts, inheritances, or legacies during the years in question. Discussion
Respondent's determinations are presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a); . However, respondent has the burden of proof with respect to the additions to tax for fraud. Sec. 7454(a); Rule 142(b). Cost of Goods Sold
In 1986 and 1987, petitioners claimed cost of goods sold in the amounts of $ 3,308 and $ 43,341, respectively. Respondent determined that petitioners *517 are not entitled to these amounts as the beginning and ending inventory amounts had not been established. Petitioners presented no evidence on this issue; consequently, we sustain respondent's determination. Rent and Electric Expenses
In 1986, petitioners claimed $ 3,732 on Schedule C as a rent expense for the 26th Street store. Respondent disallowed $ 669 of the deduction, determining that petitioners failed to substantiate any amount of the expense in excess of $ 3,063. Similarly, petitioners claimed a total of $ 3,722 on their Schedules C as electric expenses in 1986. Respondent disallowed $ 209 of the deduction, thus allowing $ 3,513. [1] Petitioners did not present any evidence on these issues; thus, we sustain respondent's determinations. *518 Unreported Income
After making the Schedule C adjustments discussed above, respondent determined that petitioners' books and records were inadequate to properly reflect their income and accordingly, using the source and application of funds method, reconstructed petitioners' income for 1986 and 1987. Thus, respondent determined not only that petitioners had failed to substantiate the cost of goods sold and deductions for rent and electric expenses, but also that their reported income for 1986 and 1987 should be increased by amounts determined by the source and application of funds method. In the absence of adequate books and records, it is well established that the Commissioner has the authority to compute the income of a taxpayer by whatever method, in the opinion of the Commissioner, clearly reflects income. Sec. 446(b); . The source and application of funds method is an acceptable method. , affd. per curiam on another issue ; , *519 affd. in part, revd. in part and remanded ; . A source and application of funds analysis is accomplished by comparing known cash expenditures with known receipts. If a taxpayer's expenditures for a given year exceed reported income and the source of funds is unexplained, the excess expenditures represent unreported income. The method is based on the assumption that the amount by which a taxpayer's application of funds during a taxable period exceeds his reported sources of funds for that same period has taxable origins. The taxpayer may show that the excess application is attributable to such nontaxable items as loans, gifts, or cash on hand at the beginning of the period. ; . At trial, the Court ruled that petitioners were collaterally estopped from arguing that they had a cash hoard in 1986 and 1987. [2]
*520 Exhibits A and A1 of the notice of deficiency reflect the following computations: 1986
1987
Application of Funds
Increase in bank account balances: The Bank of Bradenton  $ 133.56   $ 1,627.27 Florida Federal #70530008816  175.65
--   Coast Federal  411.61
--   Key Savings Bank  --   19.00
Crossland Savings #0480019785  781.56
637.64
[1] Increase in ending inventory  8,974.61
--   Personal living expenses: House payments  6,800.00
7,200.00
Downpayment - residence  3,000.00
--   Household operations  289.00
289.00
House furnishings  751.00
751.00
Utilities  1,487.00
1,487.00
Food  3,002.00
3,002.00
Apparel and services  1,003.00
1,003.00
Transportation  Gas and oil   1,111.00
1,111.00
All other   2,687.00
2,687.00
Health care  863.00
863.00
Other expenditures  2,374.00
2,374.00
Insurance  280.00
280.00
Personal taxes  2,626.00
2,626.00
Payments to Chrysler First  3,010.94
2,823.96
Payments to Cooper Finance  403.09
322.68
Payments to Mutual Federal  10,803.76
8,313.78
Downpayment - automobile  --   2,200.00
Monthly payments on automobile  --   2,744.80
Total applications
50,967.78
42,362.13
Sources of Income
Decrease in bank account balances: First State Bank of Arcadia  982.01
17.96
Crossland Savings #9550214826  2,386.21
--   Florida Federal #70530007658  1,265.78
52.09
Florida Federal #70530008816  --   175.65
Coast Federal  --   411.61
[2] Decrease in inventory  --   14,784.35
Adjusted gross income reported on your return  8,755.98
8,709.00
Total sources of income
13,389.98
24,150.66
Total applications less total sources
37,577.80
18,211.47
Unreported income (rounded)
37,578.00
18,211.00
*521 These amounts of unreported income were then carried over to Schedule 1 of the notice of deficiency, entitled "Statement -- Income Tax Changes", as follows: Taxable Years Ended
Dec. 31 Dec. 31
1986
1987 1.
Adjustments to income
a. Unreported income
$ 37,578
$ 18,211
b. Cost of goods sold
3,308
43,341
c. Schedule C - Electric expense
209
-- d. Schedule C - Rent expense
669
-- e. Exemptions
2,160
-- 2.
Total Adjustments
43,924
61,552
While respondent's use of the source and application of funds method was reasonable in light of petitioners' failure to present books and records, respondent has erred in her calculation of petitioners' unreported income. The problem stems from respondent's use of petitioners' adjusted gross income as shown on their returns as a source of funds in the source and application of funds analysis. Having made adjustments to the amounts claimed on petitioners' Schedules C, respondent failed to take those corrections into account when using petitioners' adjusted gross income as a source of funds. For example, respondent disallowed the amounts petitioners claimed on Schedules C in each year for the cost *522 of goods sold. However, respondent then failed to take into account for purposes of the source and application of funds analysis that the result of this disallowance is an increase in petitioners' adjusted gross income in each year and a concomitant increase in petitioners' sources of funds. The same is true of respondent's disallowance of a portion of the deductions in 1986 for rent and electric expenses. For 1986, the result of these computational errors is that petitioners' unreported income is larger than it should be. Petitioners' adjusted gross income for 1986 should be increased by $ 4,186, which is the total of the disallowances for the cost of goods sold, rent, and electric expense. For 1987, petitioners' adjusted gross income should be increased by $ 43,341, the amount disallowed for cost of goods sold. The result of this correction to the calculation for 1987 is that applications of funds no longer exceed sources; thus, there is no unreported income for 1987. However, there still remains the increased income resulting from the Schedule C adjustments. Respondent's concessions regarding the Crossland Savings accounts also alter the amount of unreported income in 1986. *523 Removing the Crossland Savings accounts from the unreported income calculations causes an increase of $ 1,604.65 in the amount of unreported income for 1986. For 1987, removal of the Crossland Savings accounts simply eliminates an application of funds, and consequently, does not change the result of the source and application of funds analysis. Petitioners stipulated some of the applications of funds listed in the notice of deficiency, but would not stipulate the amounts respondent determined for household operations, house furnishings, utilities, food, apparel and services, transportation, health care, and other expenditures, which respondent determined based on U.S. Bureau of Labor Statistics, Consumer Expenditure Survey: Interview Survey, 1982-83, Bulletin 2246 (1986). In the First Interrogatories to Petitioners, respondent requested that petitioners explain why the amounts were incorrect and provide amounts they believed to be correct. Nevertheless, petitioners did not provide any explanation for their rejection of those amounts, nor did they provide any alternative amounts, and they did not present any argument on this issue at trial. Petitioners did not submit a brief. *524 We find that the figures respondent used in arriving at petitioners' personal expenditures are proper. Other than to say that they believed respondent had miscalculated their tax liability, petitioners presented no testimony or other evidence regarding their alleged understatements of income. As the corrected computations for the source and application of funds analysis fail to demonstrate that there was any unreported income for 1987, respondent's determination that petitioners had unreported income in that year is not sustained. For 1986, however, we find that petitioners failed to carry their burden of proof, and sustain respondent's determination that petitioners had unreported income, although in a reduced amount. The foregoing is summarized as follows: 1986
1987
SCHEDULE C ADJUSTMENTS:
Schedule C income as reported on return
$ 8,755.98 $ 8,709.00 Adjustments to Schedule C:
Cost of goods sold  3,308.00 43,341.00 Electric expense  209.00 --    Rent  669.00 --    Corrected adjusted gross income from
Schedule C (rounded)  12,942.00 52,050.00 UNREPORTED INCOME:
Applications
Total applications per notice  of deficiency   50,967.78 42,362.13 Less Crossland Savings accounts  (conceded by respondent)   (781.56)
(637.64)
Total corrected applications  50,186.22 41,724.49 Sources
Decrease in bank account balances  (Crossland Savings accounts   removed)    2,247.79 657.31 Decrease in inventory  --    14,784.35 Corrected adjusted gross income  from Schedule C   12,942.00 52,050.00 Total corrected sources  15,189.79 67,491.66 Total applications less total sources
34,996.43 (25,767.17)
Unreported income (rounded)
34,996.00 --    SUMMARY:
Corrected adjusted gross income from
Schedule C 12,942.00 52,050.00 Unreported income
34,996.00 --    Corrected adjusted gross income
47,938.00 52,050.00 Less exemptions
(4,320.00)
(3,800.00)
Corrected taxable income
43,618.00 48,250.00 *525 Self-Employment Tax
Respondent determined that Mr. Cheesman received self-employment income in 1986 and 1987 in the amounts of $ 50,520 and $ 36,720, respectively. Respondent determined that Mrs. Cheesman received self-employment income in 1987 of $ 33,542. Petitioners did not present any evidence to demonstrate that they were not liable for self-employment taxes. Therefore, while the amounts of self-employment income need to be adjusted to reflect our findings with respect to petitioners' unreported income, we hold that Mr. Cheesman is liable for such tax in 1986 and 1987, and Mrs. Cheesman is liable for such tax in 1987. Additions to Tax for Fraud
The next issue for decision is whether petitioners are liable for the addition to tax for fraud under section 6653(b) for 1986 and 1987. To establish fraud, respondent must prove by clear and convincing evidence that: (1) An underpayment exists for 1986 and 1987, and (2) petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent collection of such taxes. , affg. ; *526 . In order to prove an underpayment, the first prong of the fraud test, respondent is not required to establish the precise amount of the deficiency. , affd. ; . However, respondent cannot discharge her burden by simply relying on the taxpayer's failure to prove error in the determination of the deficiency. ; If respondent establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is to be treated as attributable to fraud, except with respect to any portion of the underpayment that petitioners establish is not attributable to fraud. Sec. 6653(b)(2). Petitioners failed to keep books and records that could establish the exact amounts of income earned by the businesses. They primarily received cash in operating their businesses *527 and paid business expenses with cash. They regularly used business receipts to pay personal expenses without maintaining any records. We hold that respondent has demonstrated that the likely source of the underpayment was the videotape rental businesses operated by petitioners. Under the second prong of the fraud test, respondent must prove by clear and convincing evidence that petitioners had the requisite fraudulent intent. Mr. Cheesman previously was found to have intentionally failed to report taxable income from petitioners' businesses in 1984 and 1985. . In the instant case, Mr. Cheesman testified that petitioners' business practices in 1986 and 1987 were approximately the same as they were in 1984 and 1985. We find that very little had changed. As in the earlier years, petitioners dealt extensively in cash, failed to maintain adequate books and records, and discarded cash register tapes. Each of these facts indicates an intent to conceal income. See , *528 affg. ; , affg. in part ; . Petitioners said little in their own defense, and when asked why they did not produce records to demonstrate that respondent's calculations were incorrect, petitioners' answers were evasive. Finally, we find that petitioners consistently and substantially have understated their income. This is strong evidence of intent to evade taxes. , affg. . We conclude that respondent has satisfied her burden of proof with respect to the addition to tax for fraud for 1986 and 1987. Addition to Tax for Substantial Understatement
If there is a substantial understatement of income tax for a taxable year, section 6661(a) imposes an addition to tax equal to 25 percent of the underpayment attributable to that understatement. An understatement exists where the amount of tax *529 shown on the taxpayer's return is less than the amount required to be shown on his or her return. Sec. 6661(b)(1)(A). In the case of individuals, an understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown. Sec. 6661(b)(1)(A). The amount of the understatement is reduced by items with respect to which the taxpayer had substantial authority for his or her position or for which relevant facts affecting the tax treatment were adequately disclosed. Sec. 6661(b)(2)(B). Respondent determined that petitioners substantially understated their income taxes in 1986 and 1987. Petitioners have not shown that there was substantial authority for the treatment of these items or that the facts affecting the tax treatment of these items were adequately disclosed. In addition, petitioners do not claim that respondent should have waived the addition to tax under section 6661(a) pursuant to section 6661(c). Therefore, unless the recomputation of tax, taking into account respondent's concessions and our opinion, reduces the underpayment to less that the statutory floor for either year, the additions to tax under section 6661 will apply. To *530 reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Fifty percent of the interest due on $ 14,477.↩
2. Fifty percent of the interest due on $ 22,483.↩
1. It is unclear from the record why respondent determined that petitioners' claimed electric expense for 1986 totaled $ 3,385, which is the total for only three stores, apparently omitting $ 337 claimed on the Schedule C for the 26th Street store. We will assume that respondent did not intend to disallow any portion of the electric expense deduction for the 26th Street store.↩
2. Petitioners had an opportunity to litigate the cash hoard issue when it was raised with respect to similar facts in a case involving their 1984 and 1985 tax years. . The Court in that case concluded that "petitioners' claim of a cash hoard is incredible, implausible, and contrary to the objective evidence." Id.↩
1. We find it odd that respondent determined that there was an increase in ending inventory for 1986 and a decrease in inventory for 1987, in view of the fact that respondent disallowed the amounts petitioners claimed for cost of goods sold, because beginning and ending inventory amounts had not been established. However, as petitioners have not challenged respondent's determinations on this issue, respondent's determinations are sustained.↩
2. See supra note 1.↩